## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

KANISHA N. THOMAS o/b/o N.N.S.,

         **Plaintiff,**

-vs-                                          Case No.  6:14-cv-647-Orl-DAB

COMMISSIONER OF SOCIAL
SECURITY,

         **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

On behalf of N.N.S., Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying the claim for Supplemental Security Income (SSI) under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, it is **ORDERED** that the decision of the Commissioner is **AFFIRMED**.

## I.    BACKGROUND

### A.    Procedural History

On August 5, 2011, an application for childhood Supplemental Security Income (SSI) was filed for the minor child, N.N.S. (the "Child") by her mother (Plaintiff), alleging that the Child was disabled since January 1, 2008 due to attention deficit hyperactivity disorder ("ADHD"). R. 21, 150, 172.  Plaintiff's claim was denied initially and upon reconsideration.  R. 99, 109.  Plaintiff timely

requested a hearing before Administrative Law Judge Ken B. Terry (hereinafter referred to as "ALJ") which was held on May 10, 2013. R. 46-75.  In a decision issued January 3, 2012, the ALJ found the Child not disabled as defined under the Act.  R. 21-38.  Plaintiff filed a Request for Review of Hearing Decision/Order, which the Appeals Council denied on February 5, 2014. R. 5-9.  Plaintiff filed this action for judicial review on April 25, 2015. Doc. 1.

**B.     Medical History and Findings Summary**

The Child was born on November 28, 2006. R. 150.  The Child's medical history is set forth in detail in the ALJ's decision.  By way of summary, the Child was treated for seizures, attention deficit disorder, and speech impairment. R. 232-33, 286.  The Child was a preschooler (4 years old) on the application date and a school-aged child at the time of the ALJ's decision.  R. 124, 150.

After reviewing the Child's medical records and the testimony of the Child and her mother (Plaintiff), the ALJ found that the Child was a school-age child at the time of the decision and had never engaged in substantial gainful activity. R. 24.  The Child suffered from ADHD, expressive language disorder and a history of seizure disorder, "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 24.  The ALJ found that the evidence established the following functional limitations from the Child's impairments and reasonably related symptoms: less than marked limitation in the domain of acquiring and using information; less than marked limitation of functioning in the domain of attending and completing tasks; less than marked limitations in the domain of interacting and relating with others; no limitations in the domain of moving about and manipulating objects; less than marked limitation in the domain of caring for herself; and less than marked limitation in the domain of health and physical well-being. R. 37.  Based on these limitations, the ALJ found that the Child's impairments did not functionally equal any listed impairment.  R. 25-

37. Accordingly, the ALJ determined that the Child had not been under a disability at any time through the date of the decision. R. 37.

Plaintiff now asserts two errors. First, Plaintiff contends that the ALJ failed to provide an appropriate rationale in discounting the opinion from consultative psychologist Dr. Guidera; and further failed to properly reconcile the unsigned, undated teacher questionnaire, thus, he failed to support his determination with substantial evidence. Second, Plaintiff contends the ALJ failed to make a proper credibility determination. For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

## II.      STANDARD OF DISABILITY AND STANDARD OF REVIEW

In order for an individual under the age of eighteen to be entitled to Supplemental Security Income payments, the Child must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906. The rules[1] follow the three-step sequential evaluation, under which SSA will consider: (1) whether the child is working; (2) whether the child has a medically determinable "severe" impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.924. Whether a child meets the "listing-level severity" standard is dependent upon whether the child has marked limitations in two broad areas of development or functioning or extreme limitation in one of those areas. 20 C.F.R. § 416.926a. Under the regulations for children, there are six domains used to determine a child's functional equivalence: (1) acquiring

---

[1]On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("the 1996 Act"), which amended the statutory standard for children seeking SSI benefits based on disability such that a child seeking SSI benefits based on disability will be found disabled if he or she has a medically determinable impairment "which results in marked and severe functional limitations," and which meets the statutory duration requirement. *Brawdy v. Barnhart*, No. Civ. A. SA01-CA-0835F, 2003 WL 1955839, at *3-4 (W.D. Tex. Mar. 27, 2003) (internal citations omitted). The final rules became effective on January 2, 2001. *Id.*

and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a.

Whether a child meets the "listing-level severity" standard is dependent upon whether the child has "marked" limitations in two broad areas of development or functioning or "extreme" limitation in one of those areas. 20 C.F.R. § 416.926a(d).  In assessing whether the Child has "marked" or "extreme" limitations, the ALJ must consider the functional limitations from all medically determinable impairments, including any impairments that are not severe, as well as the interactive and cumulative effects of the child's impairment or combination of impairments individually in each domain.  20 C.F.R. § 416.926a(c).  A marked limitation "seriously interferes" with the ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2). An "extreme" limitation is one that interferes very seriously with a child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982) (internal quotations omitted).

The court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the SSA's decision. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987).  Even if the court finds that the evidence weighs against the SSA's decision, the court must affirm if the decision is supported by substantial evidence. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981);

*see also Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).  The court may not reweigh the evidence or substitute its own judgment, even if the court finds that the weight of the evidence is against the SSA's decision. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980).  While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusions.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Walker*, 826 F.2d at 999.

## III. ANALYSIS

### A. Consultative Psychologist's Opinion and Teacher Questionnaire

Plaintiff argues that the ALJ erred in assessing the opinion from the consultative psychologist and the categories on the Teacher Questionnaire. The Commissioner argues the ALJ's opinion is supported by substantial evidence.

Plaintiff contends that the ALJ failed to provide an appropriate rationale in discounting the opinion of Dr. Guidera, the consultative psychologist.  She argues that "[w]hen considering the opinion of a consultative examiner, the ALJ is required to consider and weigh the medical source in its entirety, in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c)." Doc. 20 at 11.  She also cites other regulations regarding the weight to be given the opinion of a treating source, which would not apply to Dr. Guidera since he is an examiner who only examined the Child one time.

Plaintiff argues that the ALJ erred in stating that he was giving Dr. Guidera's opinion "great weight" but then, to the contrary, ignoring certain statements by assessing the Child with "less than marked ability" in five of the domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) caring for herself; and (5) health and physical well-being; and finding she had "no problems" in the domain of moving about and manipulating objects. R. 28-37; *see* 20 C.F.R. § 416.926a(b)(1).  She argues that the ALJ failed to properly analyze Dr. Guidera's opinions regarding the Child's impairments in the domains of

attending and completing tasks and in interacting and relating to others, both of which, she argues, the Child was "markedly" limited.  Plaintiff also argues that the ALJ should not have placed "significant weight" and reliance on an unsigned[2] Pre-Kindergarten Teacher Questionnaire because the ALJ gave this assessment[3] the most weight and failed to properly reconcile the teacher's opinion with his findings.

The Child's impairments began when, as a two to three year old, she had seizures when she had high fevers.  At the time of her first seizure, she was diagnosed with ethmoidal sinusitis based on a CT scan, but she had not a seizure from late 2009 until August 2010 (high fever from bronchitis), and then none following that.  R. 218, 232, 237, 286.  Her mother (Plaintiff) told one physician that the Child had trouble with speech for about a month following a seizure.  R. 218.

On May 28, 2010, a speech language pathologist, Diane Theodore, preformed a consultative evaluation of the Child–at three and a half years old–for speech and language issues.  R. 218.  Ms. Theodore found the Child functioning in the low-average to average range for receptive and expressive language, with an articulation disorder which impacted her speech intelligibility; she indicated the results should be interpreted cautiously as significant increases and decreases in language function in young children can take place over time; she  recommended speech/language services to facilitate development of the Child's language skills. R. 218-19.  The ALJ afforded some weight to the assessment but noted that subsequent testing (by Brevard County Public Schools) showed greater functional limitations imposed by the impairment with the need for in-school therapy.

On September 16, 2011, another speech language pathologist, Maria Van Sant, conducted a consultative evaluation–when the Child was almost five years old–and determined the intelligibility

---

[2]Plaintiff contends that the Teacher Questionnaire was also undated, but the Table of Contents for the Record lists the date as October 13, 2011. 182 (Exhibit 5E).

[3]Plaintiff argues the assessment came from a "blind" source but she admits that the handwriting on the Teacher questionnaire looks "very similar" to the handwriting on the teacher discipline report completed by Plaintiff's Pre-kindergarten teachers). Doc. 20 at 13 n. 3.

of her speech was 90% intelligible to familiar and unfamiliar listeners, with repetition she improved to 95%; her errors of substituting certain consonants were "still developmental in nature." R. 277. Results of the Preschool Language Evaluation indicated the receptive and expressive language were within functional limits overall. R. 277. Thus, Ms. Van Sant's diagnosis was that the Child's receptive and expressive language skills were within functional limits for her age; her articulation/phonological skills, pragmatic skills, voice, and fluency were age appropriate. R. 278. Ms. Van Sant recommended "no services be provided at this time." R. 278. The ALJ afforded some but limited weight to this assessment because subsequent testing, school records, and testimony showed greater functional limitations imposed by the speech language impairment with the need for in-school therapy.

The Record contains the Riverview Elementary Discipline Referrals for the Child's two "suspensions" – one "in school" in another classroom (September 30, 2011) and the second one for one day at home (October 11, 2011), during the first couple months the Child began at the VPK program. On the first occasion, the Child ran in the classroom during playtime and later "exchanged words" with another student at the computer area before hitting him in the eye with her headband; she was sent to another classroom to learn correct behavior. R. 280-81. On the second occasion, she refused to lie on her mat during naptime, was disrespectful, and told the teacher "she did not want to sleep at school, she want[ed] to go home." R. 279.

The Teacher Questionnaire from Riverview Elementary dated October 13, 2011 indicated the Child's teacher (either Ms. Phillips and Ms. Martinez) had been teaching the Child daily for 6.5 hours per day in all VPK subjects since August 17, 2011. R. 182. The teacher opined the Child had no problems acquiring and using information, moving about and manipulating objects, and interacting with others as far as her speech, because almost all of it could be understood. R. 183, 186.

With respect to attending and completing tasks, the teacher opined the Child had a serious problem on a daily basis changing from one activity to another without being disruptive; there were no or only slight problems in all other areas, except for paying attention when spoken to and working without distracting others, where she had "obvious" but not serious problems. R. 184. The teacher explained in the comments section:

> [The Child] will do her work, usually with a few reminders, but she finishes and does well. When [the Child] feels like she isn't getting what she wants she cries and throws a fit – the worst was screaming and throwing objects including a chair. However, [the Child] has made huge strides in improving her behavior and the out breaks are less severe and frequent.

R. 184.

In the domain of interacting and relating with others, the teacher opined the Child had serious problems in seeking attention and expressing anger appropriately; she had a less than serious but obvious problem playing cooperatively with other children; following rules; respecting/obeying adults in authority; and taking turns in a conversation, thus, it had been necessary to implement behavior modification strategies for the Child.  R. 185.  The teacher explained:

> As a 4 year old, it is expected for communication to be lacking, transitions difficult and procedures difficult to learn. [The Child] has been removed from the classroom on 2 occasions. Her mother has been contacted and came in for a conference.  Since then, her behavior has improved and she has not escalated her fits beyond a little whining/crying.

R. 185.  In the domain of caring for herself, the teacher opined that the Child had problems handling frustration appropriately and identifying and appropriately asserting her emotional needs; she had a less than serious problems with being patient when necessary; responding appropriately to changes in her mood/calming herself and using appropriate coping skills to meet the daily demands of the school environment.  R. 187.  The teacher explained:

> [The Child] likes to work independently and does well.  When she finishes an assignment she will find something else to do. [The Child] is very organized. She is great at cleaning up properly and putting things back neatly and accurately.  She just has a difficult time dealing with her emotions.  She gets angry easily.

R. 187.  In the last section inquiring about "the physical effects of the child's physical or mental condition or treatment for the condition," the teacher noted:

> [The Child] is well taken care of.  She comes to school well groomed and on time.  At this time, I do not believe [the Child] has any problems beyond her attitude, which is within the typical range of a child her age.  I am not qualified to diagnose or report on any physical or mental conditions.

R. 188.

One month after the Teacher Questionnaire was completed, on November 28, 2011, Dr. Guidera, the consultative psychologist, evaluated the Child and found her speech difficult to understand, but she did appear to understand what was asked of her; her overall vocabulary was slightly below average, and she had "difficulty understanding similarity problems; she could count but she had difficulty with taking away"; however, he noted no bizarre or unusual behaviors, nor any signs of aggression; she was taking no medications at the time.  R. 286.  Dr. Guidera noted that she had been suspended in school twice where aggression was a problem, but she was going to kindergarten the following year.  R. 286.  Dr. Guidera observed that "[a]t times in the office, she is moving about, out of her seat, touching things, picking up items and not letting them go even when asked to do so. At other times, she puts her head on the desk and sings quietly to herself. At night she has difficulty sleeping. During the day, she is active, wandering about in her house, playing and singing to herself, and generally being non-destructive but very active."  R. 286.  Dr. Guidera diagnosed the Child with ADHD, combined type, and an expressive language disorder. R. 287.  He opined she would have moderate to severe problems responding to others at school and in her overall focus, concentration, effort, and persistence in school.  R. 287.

The ALJ gave great weight to Dr. Guidera's objective findings and diagnoses because they were generally consistent with medical records, school records, a teacher questionnaire and testimony

to some extent; however, the ALJ assessed the Child with less than marked abilities in five domains, and no problems in the domain of moving about and manipulating objects.

On March 5, 2012, Nicole Hess, a Pre-Kindergarten school psychologist for Brevard County Public Schools evaluated the Child for possible developmental delays and testing indicated low average functioning in the area of oral language/vocabulary skills with delayed skills demonstrated in the areas of print knowledge, phonological awareness, and mathematics skills.  R. 340.  Reported behavioral functioning by the Child's mother and teacher indicated at-risk concerns in the areas of hyperactivity, aggression, attention problems, adaptability, and social skills.  R. 340.  The Child had a language delay and could benefit from specific language services; however, the test results of young children were to be interpreted cautiously and should be viewed as an estimate of current functioning levels.  R. 340-41.

On April 12, 2012, an Individualized Education Plan ("IEP") was completed for the Child for Pre-Kindergarten and Kindergarten years because she was "language impaired" and "at-risk" in the area of aggression, with limited expressive skills, and emergent literacy skills.  R. 296-97.  Testing within the school district indicated that she required direct language therapy to remediate her inability to understand and express age appropriate language: she had difficulty with understanding "er" ending and passive voice sentences and verbal expression of analogies, category naming, sentence repetition, qualitative concepts, past tense, and similarity descriptions to improve her ability to participate in a regular classroom; the speech language pathologist would be responsible, but the Child would remain in a regular classroom.  R. 301-02.  The ALJ afforded great weight to these test results and opinions to the extent that they were similar to other findings also support the sever impairments and need for additional intervention programs.

Plaintiff argues the ALJ erred in giving "great weight" to Dr. Guidea's objective findings, including his opinion that the Child was "likely to have *moderate to severe problems* in regard to her

overall focus, concentration, effort, and persistence in her school experiences" (R. 287 emphasis added), but then finding her impairment was "less than marked" in the applicable category.  Plaintiff argues that Dr. Guidera's opinion indicates the Child's impairments in attending and completing tasks – which is how well a child is able to maintain attention, and how well she is able to begin carry through, and finish activities, including how easily she can change activities (*see* 20 C.F.R. § 416.926a(h)) – are within the "marked" range as the baseline of her behavior, which he opined was "moderate to severe."  Dr. Guidera also opined that the Child had "moderate to severe problems in regard to responding to others at school which would include such people as peers, other students, teachers, and other adults," which Plaintiff argues, is an opinion that the Child has a "marked" limitation in interacting and relating to others.  R. 287; *see* 20 C.F.R. § 416.926a(i) and SSR 09-05p. The Commissioner contends that the ALJ properly found Plaintiff had less than a marked limitation in attending and completing tasks based on the evidence of record, the mother's testimony about the Child's play and activities, and her lack of medication.  R. 32-33.

The ALJ gave the basis for his decision as:

> The claimant's mother testified that the child has trouble focusing but can play with her doll for up to 20 minutes at a time. Dr. Guid[er]a noted that she had ADHD but takes no medication for it. He also indicated that the claimant was likely to have moderate to severe problems in regard to her overall focus, concentration, effort, and persistence in her school experiences. In her school experiences, she was likely to be quite inattentive ([Exhibit] 10F). Her teacher noted up to serious problems in a few categories of this domain. Most notably, the claimant has trouble with disturbing herself and others when changing activities and an obvious problem with paying attention when speaking directly to her. However, the teacher generally noted that the claimant does her work with reminders, finishes her work and does well, but also throws fits when she does not get her way. Nonetheless, her teacher noted that the claimant also made huge strides in this domain in by improving her behavior and having less frequent and less severe outbursts  ([Exhibit] 5E). Furthermore there is nothing in the evidence of record to show that the claimant cannot control her outbursts when directed to do so.

R. 33.

The ALJ correctly interpreted Dr. Guidera's opinion and the Teacher's Questionnaire and comments.  The Regulations define "marked" limitations as a limitation that "seriously interferes with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). The ALJ also cited to the same portion of the regulations that explain:

> A child's day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment( s) limit several activities. The regulations also explain that a "marked" limitation also means . . . [a] limitation that is "*more than moderate*" but "less than extreme."

R. 23 (emphasis added).  The ALJ specifically noted Dr. Guidera's opinions that the Child was likely to have "*moderate* to severe problems" in "her overall focus, concentration, effort, and persistence in her school experiences," and in "responding to others at school."   R. 33, 287.   However, Dr. Guidera did not say the Child's impairment was consistently "*more than* moderate," which is the SSA regulatory definition of "marked."  Moreover, the ALJ noted the teacher's opinion that the Child did her work with reminders, finished her work and "does well," and although she "throws fits when she does not get her way," she "had made huge strides in this domain by improving her behavior and having less frequent and less severe outbursts."   R. 33. The ALJ was entitled to consider and appropriately relied upon the VPK Teacher's Questionnaire responses in finding that the Child's impairments were "less than marked" in the two domains.

Plaintiff argues that the ALJ erred in relying on the written out comments and opinions of the Child's teacher in the Questionnaire because the teacher allegedly found the Child had "marked" limitations on a "daily" basis in three separate domains – attending and completing tasks, interacting and relating with others, and caring for herself – and Plaintiff argues that the ALJ erred in failing to reconcile why the teacher questionnaire did not result in marked limitations in these three domains especially under the "whole child" approach.

While it is true that the teacher opined the Child had a "serious" problem on one or two subcategories of behaviors/activities within in a domain consisting of ten to thirteen subcategories, the teacher did not specifically opine that the Child had an overall "marked" limitation in a particular domain; rather, the teacher wrote explanatory comments about the Child's overall behavior for each domain that explained the Child was "improving" or "doing well" after a few months in VPK learning the appropriate behavior and conferences with her mother. R. 183-85. Moreover, the teacher marked every single one of the 50+ subcategories of behavior, whether "no problem" or "serious" as "daily," probably because she saw the Child daily in school.

As quoted above, the ALJ properly relied on the teacher's opinion in considering the domain of attending and completing tasks. R. 33. As to the other two domains– interacting and relating with others and caring for herself–the ALJ properly considered the entire opinion of the Child's teacher, including her explanatory notes about the Child's improvements:

> The claimant testified that she does not like to play with other students. . . . In addition, the mother testified that the claimant has had school discipline. School records show that the claimant had 2 school discipline reports. The claimant had 2 reports in September and October 2011. The first report indicated that the claimant was disruptive and disrespectful when she ran in the classroom and hit another student with her headband. The second report indicated that the claimant was disruptive and disrespectful when she refused to get on her mat and talked to others while in a line ([Exhibit] 8F). Dr. Guida noted that the claimant has moderate to severe problems in responding to others at school, which would include such people as peers, other students, teachers, and other adults ([Exhibit] 10F). Her teacher reported that the claimant had up to a serious problem in the domain of interacting with others in the areas of appropriately seeking attention and expressing anger. However, the teacher also noted that her behavior was consistent with her age and after her mother was called, the claimant improved ([Exhibit] 5E). Furthermore, again there is nothing in the evidence to suggest that the claimant cannot control her outbursts when directed to do so and when she is disciplined for not obeying.
> * * *
> The mother testified that the claimant can get herself a snack and plays by herself. She also indicated that she has to help the claimant dress and brush her teeth. Dr. Guida noted that the claimant had adaptive skills of everyday living for a typical 5 year old and appeared to have only mild difficulties ([Exhibit] 10F). The teacher also noted some problems in the domain of self-care with up to serious problems with frustration and asserting her emotional needs. The teacher noted that the claimant has difficulty at times dealing with emotions and getting angry easily. However, she noted that the

claimant does work independently, finds other things to do, participates in cleaning in a neat manner, and is organized ([Exhibit] 5E).

R. 34, 36.  Accordingly, the ALJ's finding that the Child's had a less than marked impairments in interacting and relating with others and caring for herself was based on substantial evidence from the Child's teacher, the mother's testimony, and the consultative psychologist's opinion.

### B.  Credibility Determination

Plaintiff contends that the ALJ failed to make a proper credibility determination and the case should be remanded for the ALJ to properly assess her credibility. In considering subjective complaints made by a Plaintiff about her Child, the ALJ must consider all of the statements about the Child's symptoms, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the symptoms alleged, the ALJ must apply the Eleventh Circuit's three-part standard which requires: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged symptoms arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged symptoms. *Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Here, the ALJ correctly cited the standard applied by the Eleventh Circuit.  R. 26.

The Commissioner argues that the ALJ properly discounted Plaintiff's complaints of the Child's disabling limitations.  When an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial

-14-

supporting evidence in the record.   As a matter of law, the failure to articulate the reasons for discrediting subjective complaints testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

In this case, the ALJ made the following credibility determination:

The claimant and her mother testified at the hearing. The claimant testified that she is 6 years old and in kindergarten. She has classmates and with whom she plays, but whom she does not like all "that much". She has two god brothers aged 7 and 10. She has a sister aged 10. She later stated that she does not play with her classmates, god brothers, or her 10 year old sister.

The claimant's mother also testified about the claimant's impairments and functional abilities. The claimant has 3 sisters. Her school held her back in kindergarten. In addition, her mother testified that her speech delay has worsened from the time of her initial testing. The claimant does not have many friends, does not get along with others, and fights. She does not do much of what her mother tells her to do even with discipline. For examples, she cries, pitches a fit, and slams the door when told to clean up her room. She hits the youngest sisters and her older sister will discipline the claimant. She has not been on medication for at least 2 years but has an appointment scheduled after the hearing. She spends her time playing with her dolls, watching television, or sitting outside with make believe games and friends. Her milestones include walking sometimes after 14 months, talking at 24 months, and pediatric records show a normal height and weight. Her mother stays at home with the claimant. She rides the bus to school. She does not have regular seizures and has not had one in "a while" per the mother's testimony. Her mother helps the claimant dress and put on her shoes. She can get her own snacks but cannot brush her teeth by herself. Her mother works with the claimant on her ABC's. She cannot stays focused on things and has anger issues. She has been suspended 2 times at school and does not respect the teacher's authority. She is not focused on a family night but can focus on playing with dolls for 10-20 minutes. She throws temper tantrums in stores.

The general medical records show that the claimant had a seizure when she had treatment for a high fever. She had normal CT scans of the brain and chest x-rays. She also had medical check-ups with a neurologist following her seizures. Treatment notes reflect that she had a normal MRI of the brain and normal EEG results. Her neurologist also prescribed seizure medication on an as need basis only. She also had general check-ups from a pediatrician. These appointments reflect that the claimant could ride a tricycle, dress herself, jump, run, say 2-3 sentences, and generally had normal 5 year old milestones. At her last visit in July 2012, treatment records reflect that the claimant took no medications and could perform activities such as print the alphabet and jump.

R. 27.

Plaintiff argues that the ALJ's credibility determination was unsupported by substantial evidence and the ALJ's analysis was conclusory, while her testimony is highly consistent with the record. Plaintiff points to her testimony that the Child does not have any friends, and the Child's own testimony that she does not like her classmates much as they do not like to play with her (R. 53, 58), which were consistent with Dr. Guidera's opinion that the Child had moderate to severe problems responding to others at school, including peers, other students, teachers, and other adults. R. 287. Plaintiff also argues that the Behavior Assessment System for Children (Second Edition) testing placed the Child in the "at-risk" category for hyperactivity, aggression, and in externalizing problems (R. 312), and she was suspended twice in school, once for hitting another child in the eye. R. 279-82. In addition, Plaintiff testified the Child's speech problems were worsening (R. 57), which is borne out by the records showing Claimant's latest IEP indicated Claimant was having difficulty answering questions and giving appropriate answers without prompts, describing objects in detail and with being able to identify letter sounds, and she "demonstrated a significant delay in receptive language and expressive language, which requires instruction by a speech language pathologist in a small-group setting." R. 210-12. Plaintiff also challenges the ALJ's discounting of the testimony because the Child was not taking medication for the mental health impairment of ADHD, even though Plaintiff testified that the Child had an appointment coming up for such medication. R. 26, 27, 28, 32, 33. She argues that the ALJ imposed his own view "playing doctor" by noting during the hearing that "when they're real young, they hate to put them on medication. Be she's at the age now where they would probably start her on something for attention deficit." R. 59-60. She argues that the ALJ's citation to the Child's lack of use of medication for ADHD was not a proper basis for discrediting the testimony because the ALJ made a comment to the effect that "when they're real young, doctors hate to put them on medication." R. 59.

The Commissioner argues that Plaintiff's and the Child's statements about subjective symptoms, alone, were insufficient to establish disability, and credibility determinations are the

province of the ALJ. Doc. 21 at 17 (citing 20 C.F.R. § 416.929(a), (c)).  The Commissioner contends

that the ALJ appropriately found the evidence of record did not support Plaintiff's or the Child's

allegation of disabling limitations, and the mother reported no problems with paying attention in the

function report.  R. 30, 164-71.

      Specifically, the ALJ found the testimony of the Child and her mother (Plaintiff) to be sincere

but not fully supported by the Record:

> After considering the evidence of record, the undersigned finds that the claimant's
> medically determinable impairments could reasonably be expected to produce the
> alleged symptoms; however, the statements concerning the intensity, persistence and
> limiting effects of these symptoms are not credible to the extent they are inconsistent
> with finding that the claimant does not have an impairment or combination of
> impairments that functionally equals the listings for the reasons explained below. The
> undersigned has considered the testimony of the claimant's mother and the allegations
> and complaints asserted by her throughout the record and in the function report
> pursuant to Social Security Ruling 96-7p credibility criteria and, while sincere, the
> claimant's conditions are not disabling. The testimony and statements as discussed
> within the specific domains below, concerning the intensity, persistence, and limiting
> effects of the claimant's severe impairments are not supported by the objective
> evidence to the extent they assert a degree of restriction beyond that described below.
> The undersigned nevertheless affords some deference to this testimony and these
> reports to the extent they provide substantiated evidence as to the severity of the
> claimant's impairments and how they affect the claimant's ability to function and to the
> extent that they are consistent with the objective medical record of evidence. However,
> the record evidence shows that while the allegations are credible they are not
> disabling. The claimant had diagnoses of ADHD, expressive language disorder, and
> a history of a seizure disorder. However, the record reflects that she takes no
> medication for ADHD, only had prescribed medication for seizures as needed and has
> not had a recent seizure, and had school intervention with an IEP program for her
> speech delay. Further, teacher questionnaires and other school records show some
> school problems and some behavior problems, but the record also shows that she has
> improved in most areas with treatment.

R. 30 (internal citations omitted).  The ALJ then addressed his findings for each of the six domains

separately[4].

      The ALJ appropriately based his credibility discussion on the medical and school records,

noting the Child had not received medication in two years; she had received an IEP from the school

to address her speech delay; and the Teacher Questionnaire and other school records demonstrated

---

[4]The ALJ's "less than marked" findings as to the two domains in dispute are discussed in the prior section.

the Child had improved in most areas with treatment. R. 30. These are factors the ALJ is supposed

to consider. The Behavior Assessment System for Children, Second Edition ("BASC-II") testing by

the School Psychologist for Brevard County Public Schools showed that the Child was "at-risk" for

hyperactivity, aggression, and attention problems; however, according to the report from the School

Psychologist, "at-risk" scores on the BASC-II identify "either a problem that may not be severe

enough to require formal treatment or a potential of developing a problem that needs careful

monitoring." R. 337. Following the testing, the School Psychologist recommended "behavioral

strategies what would support social and emotional developmental deficits," but the IEP established

for the Child left her in the regular classroom, and, at that time, only her language delay and

"communication goals" were addressed at length in the IEP. *See, e.g.,* R. 301-04.

Although Plaintiff cited the ALJ's comment regarding the Child previously being "too young

for the doctor to prescribe medications," she failed to include the full comment which was that

"[S]he's at the age now where they probably would start her on something for the attention deficit."

R. 59-60. Obviously, if the Child's ADHD could be controlled with medication, then her condition

would not be disabling. The ALJ carefully analyzed the Record, and his credibility decision was

based on substantial evidence.

# CONCLUSION

Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of

42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion

and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on June 8, 2015.

_David A. Baker_

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record